**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| TONY MARVELL CROPP, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 4:08CV1667MLM |
| ) | |
| DAVE DORMIRE, ) | |
| ) | |
| Respondent. ) | |

**MEMORANDUM OPINION**

Before the court is the Petition Under 28 U.S.C. § 2254 by a Person in State Custody filed by Petitioner Tony Marvell Cropp ("Petitioner"). Doc. 1. Respondent filed a Response to Order to Show Cause Why a Writ of Habeas Corpus Should Not Be Granted. Doc. 7. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Doc. 7.

**I.**
**BACKGROUND**

Petitioner was charged by Felony Information in the Circuit Court of Randolph County, Missouri, as follows: Count I, the class B felony of robbery in the second degree, in that on or about June 18, 2006, Petitioner forcibly stole money and cigarettes in the possession of T.A.; Count II, the felony of assault in the first degree, in that on or about June 18, 2006, Petitioner attempted to strike R.P. with a brick, and such conduct was a substantial step toward the commission of the crime of attempting to cause serious physical injury to R.P., and was done for the purpose of committing such assault; Count III, unclassified armed criminal action; Count IV, the class C felony of domestic assault in the second degree, in that on or about June 18, 2006, Petitioner recklessly caused serious physical injury to T.A. by repeatedly punching her in the face, and T.A. and Petitioner were family or

household members in that T.A. and Petitioner were adults who had been in a continuing social relationship of a romantic or intimate nature; Count V, the class B misdemeanor of driving while intoxicated; and Count VI, the class A misdemeanor of driving while license was suspended and/or revoked. Resp. Ex. C at 39-40; Resp. Ex. C at 48. On August 14, 2006, Petitioner signed a plea agreement providing that Petitioner would plead guilty to Counts I, II, IV, V and VI and that Count III would be dismissed. Resp. Ex. C at 41-43. Petitioner appeared in court to enter a guilty plea and requested more time to consider his plea. The plea agreement further stated that the prosecutor would recommend that Petitioner serve a total of ten years imprisonment for Counts I, II, and IV and would recommend thirty days with credit for time served for Counts V and VI. Resp. Ex. C at 42-43. The case was continued until the September 13, 2006. Resp. Ex. D at 2.

On September 13, 2006, Petitioner appeared before the court to enter a plea of guilty as set forth in the plea agreement. Prior to the court's accepting Petitioner's plea, the court informed Petitioner of the range of punishment for the crimes with which he was charged and asked Petitioner if his counsel had also explained the range of punishment. Petitioner testified that he understood the range of punishment and that counsel had explained it to him. Also, before the plea court, Petitioner testified that he had no complaints regarding his counsel and that he understood his trial rights including that he had the right not to testify and that he would not be required to testify. Upon being questioned by the plea court Petitioner responded that he understood a jury would have to find him guilty beyond a reasonable doubt of each count and that by pleading guilty there would be no trial. Resp. Ex. C at 49-50. Petitioner testified that he was pleading guilty because he did, in fact, commit the offenses and that he was pleading guilty of his own free will and accord. Resp. Ex. C at 50.

The prosecutor testified at Petitioner's plea hearing that if the matter went to trial the evidence would be as follows:

2

It had been reported that there was a fight in the street by the car of [T.A.], the victim. She was an ex-girlfriend of the Defendant. She related being punched, her shirt ripped, with the Defendant trying to pull her out of the car, with Cropp trying to remove her purse, emptying the contents into the road. And when struggling for the purse, he removed a five dollar bill, and some ones, and a pack of Marlboro cigarettes from the purse, using physical force.

Also, [R.P.] was there. He tried to intervene, to get him from [T.A.]. And Mr. Cropp threw a brick which [ ] was destined for his head, but he ducked. So what it ended up doing is hitting his shoulder. He had a scratch on his shoulder which the officer saw, which had dust on it similar to the color of the brick.

[R.P.] went to a near-by house to call the police. While he was doing that, he saw that Cropp [had] the victim pinned between the driver door and the car, and he was striking her repeatedly. He saw that her shirt was ripped and she had scratches on her upper chest, and the sides and back of her neck.

The officers documented the injuries subsequent to the initial interview, and recovered the brick. Also, a pack of cigarettes, a five-dollar bill, and three ones were recovered from Mr. Cropp after his arrest.

The DWI came about from Officer Grant Johnson's stop of the Defendant in his vehicle, for a traffic violation. And in the course of the investigation, Mr. Cropp failed a field sobriety test. He did take a breathalyzer after being advised of his <u>Miranda</u> [rights] and the Missouri implied consent law. And he had a .12 percent BAC, if I remember correctly.

Resp. Ex. C at 50-51.

The prosecutor further stated that the incidents involving T.A. and the assault involving R.P. occurred on June 18, 2006, and that the misdemeanors occurred on May 9, 2006, in a separate case which was added "for efficiency." Resp. Ex. C at 51. Petitioner testified that there was a factual basis to all of the crimes to which he was pleading guilty, including that he did drive a motor vehicle while intoxicated and that his license was suspended or revoked and that he had no right to drive. Resp. Ex. C at 51. Petitioner entered a plea of guilty to Counts I, II, IV, V and VI and the court accepted his pleas. Resp. Ex. C at 52-53. The court sentenced Petitioner to ten years incarceration for Counts I and II and seven years for Count IV which sentences are to be served concurrent with one another.

3

Petitioner filed a pro se post-conviction relief motion on February 27, 2007. Resp. Ex. C at 3-9. Counsel was appointed and filed an amended motion. Resp. Ex. C at 13-20. On July 6, 2007, the motion court denied Petitioner post-conviction relief. Resp. Ex. C at 21-24. On December 7, 2007, Petitioner filed an appeal of the motion court's decision with the Missouri appellate court. The Resp. Ex. A. On July 23, 2008, the Missouri appellate court affirmed the decision of the motion court and denied Petitioner relief. Resp. Ex. D.

On October 24, 2008, Petitioner filed a § 2254 Petition in which he raises the following issue:

**Petitioner received ineffective assistance of counsel because his plea counsel failed to advise him that he would have to serve eighty-five percent of his sentence and that, therefore, his plea was not intelligently made.**

Doc. 1 at 5.

## II.
## EXHAUSTION, PROCEDURAL DEFAULT AND TIMELINESS ANALYSIS

To preserve issues for federal habeas review, a state prisoner must fairly present his or her claims to state courts during direct appeal or in post-conviction proceedings. Sweet v. Delo, 125 F.3d 1144, 1149 (8th Cir. 1997). Failure to raise a claim in a post-conviction appeal is an abandonment of a claim. Id. at 1150 (citing Reese v. Delo, 94 F.3d 1177, 1181 (8th Cir. 1996)). A state prisoner who fails "'to follow applicable state procedural rules [for] raising the claims' (citation omitted) . . . , is procedurally barred from raising them in a federal habeas action, regardless of whether he has exhausted his state-court remedies." Id. at 1151 (citing Coleman v. Thompson, 501 U.S. 722, 731-32 (1991)). "[A] prisoner must 'fairly present' not only the facts, but also the substance of his federal habeas corpus claim." Abdullah v. Groose, 75 F.3d 408, 411 (8th Cir. 1996) (en banc).

Additionally, § 2244(d)(1) establishes a 1-year limitation period on petitions filed pursuant to § 2254.

4

Petitioner presented the issue which he raises in his § 2254 Petition before the Missouri appellate court. As such, Petitioner has not procedurally defaulted this ground for habeas relief and has exhausted his State remedies. Additionally, the court finds that Petitioner's § 2254 Petition is timely filed.

## III.
## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA"), applies to all petitions for habeas relief filed by state prisoners after this statute's effective date of April 24, 1996. Lindh v. Murphy, 521 U.S. 320, 326-29 (1997). In conducting habeas review pursuant to § 2254 a federal court is limited to deciding whether decisions of state courts were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). "'Federal law, as determined by the Supreme Court,' refers to 'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions.'" Evenstad v. Carlson, 470 F.3d 777, 782-83 (8th Cir. 2006) (quoting Williams v. Taylor, 529 U.S. 362, 412 (2000)). To obtain habeas relief, a habeas petitioner must be able to point to the Supreme Court precedent he thinks the state courts acted contrary to or applied unreasonably. Id. at 283 (citing Buchheit v. Norris, 459 F.3d 849, 853 (8th Cir. 2006); Owsley v. Bowersox, 234 F.3d 1055, 1057 (8th Cir. 2000)). Thus, where there is no federal law on a point raised by a habeas petitioner, a federal court cannot conclude either that a state court decision is "'contrary to, or involved an unreasonable application of, clearly established Federal law' under 28 U.S.C. §2254(d)(1)." Id. at 784. "When federal circuits disagree as to a point of law, the law cannot be considered 'clearly established' under 28 U.S.C. § 2254(d)(1). Id. at 783 (citing Tunstall v. Hopkins, 306 F.3d 601, 611 (8th Cir. 2002)). See also Carter v. Kemna, 255 F.3d 589, 592 (8th Cir. 2001)

5

(holding that in the absence of controlling Supreme Court precedent, a federal court cannot reverse a state court decision even though it believes the state court's decision is "possibly incorrect").

In <u>Williams v. Taylor</u>, 529 U.S. 362 (2000), the United States Supreme Court set forth the requirements for federal courts to grant writs of habeas corpus to state prisoners under § 2254. The Court held that "§2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for writ of habeas corpus with respect to claims adjudicated on the merits in the state court." <u>Id.</u> at 412. The Court further held that the writ of habeas corpus may issue only if the state-court adjudication resulted in a decision that:

> (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal Law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

<u>Williams</u>, 529 U.S. at 412-13.

<u>Williams</u> further holds that the writ will not issue merely because the federal court concludes that the relevant state-court decision erroneously or incorrectly applied clearly established federal law. <u>See id.</u> at 411. "'Rather [the] application [by the state-court] must also be unreasonable.'" <u>Copeland v. Washington</u>, 232 F.3d 969, 973 (8th Cir. 2000) (quoting <u>Williams</u>, 529 U.S. at 411). <u>See also Siers v. Weber</u>, 259 F.3d 969, 973 (8th Cir. 2001).

The Court further explained in <u>Williams</u> that for a state-court decision to satisfy the "contrary to" prong of § 2254(d)(1), the state court must apply a rule that "contradicts the governing law as set forth in [Supreme Court] cases" or if it "confronts a set of facts that are materially

6

indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Court's] precedent." 529 U.S. at 406. See also Price v. Vincent, 538 U.S. 634, 640 (2003). It is not necessary for a state court decision to cite, or even be aware of, applicable federal law, "so long as neither the reasoning nor the result of the state-court decision contradicts" federal law. Early v. Packer, 537 U.S. 3, 8 (2002).

For a state-court decision to satisfy the "unreasonable application" prong of § 2254(d)(1), the state court decision must "identif[y] the correct governing legal principle from [the Supreme] Court's decisions but unreasonably appl[y] that principle to the facts of [a] prisoner's case." Williams, 529 U.S. at 413. See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001). Upon explaining § 2254's legal standard, the Supreme Court held in Penry that "even if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable." Id. at 793 (citing Williams, 529 U.S. at 410-11). The Eighth Circuit has held that "[t]o the extent that 'inferior' federal courts have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness of the state court's resolution of the disputed issue." Atley v. Ault, 191 F.3d 865, 871(8th Cir. 1999).

Additionally, § 2254(d)(2) provides that an application for writ of habeas corpus should not be granted unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." Further, pursuant to § 2254(e)(1), "[a] state court's determination on the merits of a factual issue is entitled to a presumption of correctness." Boyd v. Minnesota, 274 F.3d 497, 500 (8th Cir. 2001). The state court's factual determinations "must be rebutted by clear and convincing evidence." King v. Kemna, 266 F.3d 816, 822 (8th Cir. 2001). For purposes of federal habeas relief, the state court decision involves an unreasonable determination of the facts in light of the evidence

7

presented in state court proceedings "only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record." Lomholt v. Iowa, 327 F.3d 748, 752 (8th Cir. 2003). See also Jones v. Luebbers, 359 F.3d 1005, 1011 (8th Cir. 2004) ("[A] state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the state court proceedings,' 28 U.S.C. § 2254(d)(2), only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record. 28 U.S.C. § 2254(e)(1)."), cert. denied, 543 U.S. 1027 (2004).

## IV.
## STANDARD FOR EFFECTIVE ASSISTANCE OF COUNSEL

Federal law provides that to prove ineffective assistance of counsel, a habeas petitioner must show that: "(1) his counsel so grievously erred as to not function as the counsel guaranteed by the Sixth Amendment; and (2) his counsel's deficient performance prejudiced his defense." Auman v. United States, 67 F.3d 157, 162 (8th Cir. 1995) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). The "performance" prong of Strickland requires a showing that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690. To overcome this presumption, a petitioner must prove that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id.

Even if a petitioner satisfies the performance component of the analysis, he is not entitled to relief unless he can prove sufficient prejudice. Id. at 697. To do so, a petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 669. The court is not required to "address both

components of the [effective assistance of counsel] inquiry if [a petitioner] makes an insufficient showing on one [component]." Id. at 697.

Additionally, the court notes that the Court stated in Strickland, 466 U.S. at 688-89, that:

> In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. Prevailing norms of practice as reflected in the American Bar Association standards and the like, e.g., ABA Standards for Criminal Justice 4-1.1 to 4-8.6 (2d ed. 1980) ("The Defense Function"), are guides to determining what is reasonable, but they are only guides. No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions. (citation omitted). ...
>
> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. (citation omitted). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." (citation omitted). There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. (citation omitted).

The United States Supreme Court further has held that to establish the ineffectiveness of counsel when a guilty plea is entered, a habeas petitioner must show that counsel's representation fell below "an objective standard of reasonableness" and that "'there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" Gumangan v. United States, 254 F.3d 701, 705 (8th Cir. 2001) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). "A no-contest guilty plea is valid if 'the plea represents a voluntary and intelligent

9

choice among the alternative courses of action open to the defendant.'" Wilcox v. Hopkins, 249 F.3d 720, 724 (8th Cir. 2001) (citing North Carolina v. Alford, 400 U.S. 25, 31 (1970)). See also Griffith v. Wyrick, 527 F.2d 109, 113 n.6 (8th Cir. 1975) ("If all that was present in this case was an inaccurate prediction of sentence by defendant's counsel ... an otherwise voluntary plea of guilty would not be vitiated.") (citing Masciola v. United States, 469 F.2d 1057, 1059 (3d Cir. 1972) (per curiam); Swanson v. United States, 304 F.2d 865, 866 (8th Cir.1962) (per curiam)).

## V.
## DISCUSSION

Petitioner contends that he received ineffective assistance of counsel because his plea counsel failed to advise him that he would have to serve eighty-five percent of his sentence and that, therefore, his plea was not intelligently made. The transcript of Petitioner's plea hearing establishes that the court explained to Petitioner, prior to accepting his guilty plea, that on each of Counts I and II, he could receive up to fifteen years and that these sentences could be served consecutively; that if these sentences were to be consecutive, it "could be a maximum of thirty years"; and that Count IV, domestic assault, carries a maximum of seven years. Resp. Ex. C at 48. Petitioner responded that he understood this. When asked by the court if his attorney explained what the court had said to him regarding the possible length of his sentences, Petitioner responded that his attorney had explained the range of punishment. Resp. Ex. C at 48.

The court then explained to Petitioner that pursuant to the plea agreement, some of the felony sentences would "be concurrent with each other," in regard to the total time of ten years, and the court explained the meaning of concurrent and consecutive. Resp. Ex. C at 48-49. Petitioner then informed the court that his lawyer had explained to him the meaning of concurrent. Resp. Ex. C at 49. The court further told Petitioner that the "plea [agreement] has a ten year cap"; that Petitioner would have a "ten-year sentence"; and that whether he had "to serve it and then be paroled, whether

10

[he] serve part of it and get probation, whether [he] just get probation with a five-year - the statutory time for probation is five years." Resp. Ex. C at 52. The court said that "it's a ten year sentence" and Petitioner responded that he understood that. Resp. Ex. C at 52. The court then specifically asked Petitioner what he thought "the plea bargain agreement is" and Petitioner responded, "[t]en year cap, right?" Resp. Ex. C at 52. The court further explained, "[t]hat means there's a possibility you may have to serve [the ten years]" and Petitioner nodded his head and said, "right." Resp. Ex. C at 52. Upon being questioned by the court, Petitioner twice testified that nobody promised him that he would "get probation." Petitioner also testified that his lawyers did not promise him probation and that he understood that if he did not "get probation, [he] then cannot complain about [his] lawyers." Resp. Ex. C at 52.

First, upon addressing Petitioner's claim of ineffective assistance of counsel, the Missouri appellate court considered that to establish ineffective assistance of counsel in the guilty plea context, Petitioner "must show, but for his plea counsel's ineffective assistance, he would not have pled guilty but would have proceeded to trial. ... Moreover, '[w]hen a movant claims his plea was involuntary because he was misled by counsel, the test is whether movant's belief was reasonable.'" Resp. Ex. D at 3-4 (citing Church v. State, 928 S.W.2d 385, 386 (Mo. Ct. App. 1996); Torrence v. State, 861 S.W.2d 149, 150 (Mo. Ct. App. 1993)). The court further held:

> [Cropp] first contests the motion court's conclusion that parole eligibility is a collateral consequence of a plea. He contends that the requirement that [he] serve eighty-five percent of his sentence is, in effect, the minimum sentence and, therefore, a direct consequence of his plea.
>
> [Cropp] argues that his plea counsel was ineffective for failing to inform him [of] this de facto minimum sentence. He points out that his plea could not be knowing and intelligent, and therefore voluntary, if he was not informed of the direct consequences of his plea.
>
> [Cropp's] arguments were raised and rejected by this court in Johnson v. State, 5 S.W.3d 588 (Mo. App. 1999). In Johnson, this court reiterated that

> "'eligibility for parole is considered to be a collateral consequence of the plea; thus, information about eligibility for parole is not among those direct consequences about which a defendant must be informed in order for the plea to be entered voluntarily and intelligently.'" Id. at 591 (quoting Reynolds v. State, 994 S.W.2d 944, 946 (Mo. banc 1999)). Accordingly, "neither counsel nor the trial court is under an affirmative obligation to inform a defendant of the parole consequences of a guilty plea." Id. The court pointed out that Rule 24.02(b)(1) only requires the defendant to be informed of the applicable range of punishment. Id. n.4. Point denied.

Resp. Ex. D at 4.

Pursuant to Williams, 529 U.S. at 412-13, the court will consider federal law applicable to Petitioner's claim. The court has set forth above the standard applicable to claims of ineffective assistance of counsel, including such claims made in the context of a guilty plea. Additionally, under federal law, "[s]olemn declarations in open court carry a strong presumption of verity." Smith v. Lockhart, 921 F.2d 154, 157 (8th Cir. 1990) (quoting Blackledge v. Allison, 431 U.S. 63, 74 (1977)). "'[T]he representations of the defendant, ... at [the plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings.'" Tran v. Lockhart, 849 F.2d 1064, 1068 (quoting Blackledge, 431 U.S. at 73-74).

Further, under federal law for a guilty plea to be valid, it must "'represent[ ] a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" Hill v. Lockhart, 474 U.S. 53, 56 (1985) (quoting North Carolina v. Alford, 400 U.S. 25, 31 (1970) (other internal citations omitted). Under federal law, a court must inform a defendant of the range of punishment in order for a guilty plea to be voluntary. See Clemons v. Armontrout, 921 F.2d 187, 190 (8th Cir. 1990). Because parole is a collateral consequence of a guilty plea, a defendant need not be informed regarding eligibility for parole in order to enter a guilty plea knowingly and voluntarily. Hill, 474 U.S. at 56. In particular, in regard to a claim of ineffective assistance of counsel based on an allegation that counsel gave "erroneous advice as to eligibility for parole under the sentence agreed to in [a] plea bargain," the Court in Hill, 474 U.S. at 60, held:

12

> We find it unnecessary to determine whether there may be circumstances under which erroneous advice by counsel as to parole eligibility may be deemed constitutionally ineffective assistance of counsel, because in the present case we conclude that petitioner's allegations are insufficient to satisfy the Strickland v. Washington requirement of "prejudice." Petitioner did not allege in his habeas petition that, had counsel correctly informed him about his parole eligibility date, he would have pleaded not guilty and insisted on going to trial. He alleged no special circumstances that might support the conclusion that he placed particular emphasis on his parole eligibility in deciding whether or not to plead guilty.

Further, in Buchheit v. Norris, 459 F.3d 849, 853 (8th Cir. 2006), the Eighth Circuit held that even if there was an obligation on the part of an attorney to advise a defendant regarding parole, prejudice as required by Strickland cannot be shown where counsel did advise a defendant that he should be prepared to serve the entirety of his negotiated sentence.

Consistent with federal law, the Missouri appellate court held, in regard to Petitioner's claim of ineffective assistance of counsel, that to establish ineffective assistance of counsel in the guilty plea context, Petitioner was required to establish that, but for his counsel's alleged ineffective performance, he would not have pled guilty. See Strickland, 466 U.S. at 688-89; Gumangan, 254 F.3d at 705. The Missouri appellate court further held, consistent with federal law, that counsel is not ineffective for failing to inform Petitioner of the minimum sentence he would have to serve because eligibility for parole is a collateral consequence of a guilty plea; a defendant need not be aware of parole eligibility for a plea to be voluntary. See Hill, 474 U.S. at 58-60; Bucheit, 459 F.3d at 853. Consistent with federal law, the Missouri appellate court also held that a defendant need only be informed of the range of punishment for his plea to be voluntary. See Clemons, 921 F.2d at 190. Indeed, Petitioner testified that he was informed of the range of punishment by counsel and expressed to the court that he understood what he was told. See Smith, 921 F.2d at 157; Tran, 849 F.2d at 1068. As such, the court finds that the decision of the Missouri appellate court in regard to Petitioner's claim that he received ineffective assistance of counsel is not contrary to federal law and

that it is a reasonable application of federal law. See Williams, 529 U.S. at 412-13. Additionally, the Missouri appellate court made a reasonable determination of the facts in light of the evidence presented. See Jones, 359 F.3d at 1011; Lomholt, 327 F.3d at 752; Boyd, 274 F.3d at 500; King, 266 F.3d at 822. The court finds, therefore, that Petitioner is not entitled to relief pursuant to § 2254 and that his petition should be denied in its entirety.

## VI.
## CONCLUSION

For the reasons stated above, the court finds that the issue raised in Petitioner's § 2254 Petition is without merit and that Petitioner's § 2254 petition for habeas relief should be denied in its entirety.

The undersigned further finds that the ground asserted by Petitioner does not give rise to any issues of constitutional magnitude. Because Petitioner has made no showing of a denial of a constitutional right, Petitioner will not be granted a certificate of appealability in this matter. See Tiedeman v Benson, 122 F.3d 518, 522 (8th Cir. 1997).

Accordingly,

**IT IS HEREBY ORDERED** that the Petition filed by Petitioner for habeas corpus pursuant to 28 U.S.C. § 2254 is **DENIED**, in its entirety; Doc. 1

**IT IS FURTHER ORDERED** that a separate Judgement will be entered this same date;

**IT IS FURTHER ORDERED** that, for the reasons stated herein, any motion by Petitioner for a certificate of appealability will be **DENIED**.

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this 27th day of July, 2009.